## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **J.E. JONES CONSTRUCTION CO. and** | ) |
| **THE JONES COMPANY CUSTOM** | ) |
| **HOMES, INC. n/k/a REJ CUSTOM** | ) |
| **HOMES,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )     **Case No. 4:05CV1121MLM** |
| | ) |
| **CHUBB & SONS, INC.,¹ FEDERAL** | ) |
| **INSURANCE COMPANY and GREAT** | ) |
| **NORTHERN INSURANCE COMPANY** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion for Summary Judgment filed by Defendant Great Northern Insurance Company ("Great Northern"), Doc. 18, the Motion for Summary Judgment filed by Defendant Federal Insurance Company ("Federal"), Doc. 20, and the Motion for Summary Judgment filed by Plaintiffs J.E. Jones Construction Co. and Jones Company Custom Homes, Inc. (jointly, "Jones" or "Plaintiffs"), Doc. 27. ²  Also before the court is the Motion to Strike Plaintiffs' Exhibits S and T. Doc. 44. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 15.

---

¹       Chubb & Sons, Inc., was dismissed as a party defendant pursuant to a motion filed by Plaintiffs. Doc. 26; Order, 8/1/06.

²       The parties have filed Responses and Replies to the various Motions for Summary Judgment.

## UNDISPUTED FACTS[3]

In Twin Chimneys Homeowners Association v. J.E. Jones Construction Co., 168 S.W.3d 488 (Mo. Ct. App. 2005), the Missouri appellate court addressed facts relevant to the matter before this court[4] and held, in relevant part, that in November 1988, J.E. Jones entered into the Twin Chimneys Partnership with J.L. Mason "to purchase real property and sell single family developed lots." Pursuant to an Indenture of Trust governing the Twin Chimney's Subdivision, Howard Chilcutt, an employee of J.E. Jones, and others served as the original Trustees.[5] The Missouri appellate court further held that "[t]he construction of the lakes, monuments, and irrigation system within the Subdivision was completed by 1990" and in 1991 J.L. Mason went out of business and Defendant J.E. Jones took over the Twin Chimneys Partnership. Id. "On March 24, 1999, the [Twin Chimneys Homeowners] Association filed a Petition for Damages against J.E. Jones" and the Trustees, including Chilcutt.[6] Id. The Association's Second Amended Petition alleged negligence and divided this claim into three counts, "one relating to the lakes, the entrance monuments, and the sprinkler system" within the Subdivision. The Association also alleged that J.E. Jones and Chilcutt breached their fiduciary duty in regard to the lakes. The Association sought punitive damages in regard to both the negligence and fiduciary duty claims. "Chilcutt admitted that, as owner and an officer of Jones

---

[3]     The facts are undisputed unless otherwise stated.

[4]     This court may and will take judicial notice of matters of record in the State court proceedings.

[5]     An amendment to the Indenture of Trust identified Custom Homes as the successor to J.E. Jones. The Indenture of Trust also named two employees of J.L. Mason as trustees and Homer Clark, an employee of Defendant J.E. Jones, as a trustee. While a suggestion of death was filed in the prior action for Clark, a timely motion for substitution was not filed. Twin Chimneys, 168 S.W.3d at 494 n.1.

[6]     The State trial court entered judgment in favor of other individually named defendants who were employees of J.L. Mason. Id. at 495.

2

Company, any money spent by Jones Company would have affected him personally. Addressing the explicit concerns of the residents about the lakes, which Chilcutt admittedly did not do, by excavating massive amounts of material from the lakes would have cost the developers, including the Jones Company, a lot of money." Id. at 497. A jury found in favor of the Association in regard to negligence relating to the construction of the entrance monument in the amount of $13,960 and in regard to the claim based on breach of fiduciary duty in the amount of $987,940. In regard to the breach of fiduciary duty claim, the jury found that Chilcutt was an agent of J.E. Jones. The jury found in favor of the defendants on all other counts.

Instruction 24, the instruction submitted to the jury addressing the breach of fiduciary duty, in the Twin Chimneys litigation stated as follows:

Your verdict must be for Plaintiff Twin Chimneys Homeowners Association and against Defendant Howard Chilcutt on Plaintiff's claim of breach of fiduciary duty if you believe:

First, Defendant Chilcutt was a subdivision trustee with control over and responsibility for maintaining, repairing, and rebuilding the common elements of the subdivision, specifically the lakes, entrance monument lighting and irrigation system, and

Second, either Defendant Chilcutt failed to exercise control with respect to the maintenance, repair or rebuilding of the lakes and siltation controls, or Defendant Chilcutt failed to exercise control with respect to the maintenance, repair or rebuilding of the entrance monument lighting, or Defendant Chilcutt failed to exercise control with respect to the maintenance, repair or rebuilding of the irrigation system, and

Third, Defendant Chilcutt in any one or more of the respects submitted in paragraph Second, thereby failed to act in the best interests of the homeowners or failed to act in a manner which placed the interest of the homeowners above those of his employer, and

Fourth, as a direct result Plaintiff sustained damage.

186 S.W.3d at 498.

The Missouri appellate court held as follows in regard to Instruction 24:

3

We find that this instruction adequately followed the substantive law on breach of fiduciary duty and hypothesized the ultimate facts necessary to establish Chilcutt's fiduciary duty and breach thereof. The ultimate facts were that Chilcutt failed in his fiduciary duty as trustee, as set out in the Subindenture Agreement, to maintain and repair the common areas, specifically the lakes, irrigation system, and/or monuments. Instruction 24 was based on and specifically tracked the language of the Subindenture Agreement delineating a trustee's duties. ...

Appellants further argue that there was no legally sufficient basis for finding that Chilcutt breached his fiduciary duties and proximately caused the Association's damages. This argument goes beyond the prejudicially defective instructional error asserted in Appellants' point relied on, in that it raises the issue of whether Instruction 24 should have been given at all based on the evidence at trial. In any event, we ... find that the evidence was sufficient for the jury to find that Chilcutt, as an individual trustee, had a duty to maintain and repair the common areas, and that he breached his duty by failing to take the necessary action to have the common areas maintained and/or repaired and thus proximately caused the damages suffered by plaintiff.

Appellants also maintain that the jury should have been instructed on the elements of fiduciary duty and should have been charged with finding whether a fiduciary duty even existed. Whether a trustee is a fiduciary is not a matter for the fact finder. A trustee is a fiduciary of the highest order and is required to exercise a high standard of conduct and loyalty in administration of the trust. John R. Boyce Family Trust v. Snyder, 128 S.W.3d 630, 636 (Mo. App. E.D.2004).

Id. at 499.

The Missouri appellate court acknowledged that a jury instruction should "notify the jury of 'what acts or omissions of the party, if any, found by them from the evidence, would constitute liability." The court found that Instruction 24 met this requirement because it "specifically notified the jury of what acts or omissions by Chilcutt, if found by the jury from the evidence, would constitute liability." Id.

Additionally, the Missouri appellate court found that Instruction 26, relating to whether Chilcutt was an agent of J.E. Jones, correctly reflected the law of agency. Id. at 500. In regard to the propriety of Instruction 26, the court found that Chilcutt's serving as a trustee for the Association was part of his duty as an employee of J.E. Jones; "[s]erving as a trustee was not incidental to his employment, nor was he attending to some simultaneous personal purpose in serving as trustee. " Id.

4

The Missouri appellate court upheld the jury's award of $987,940 in regard to the Association's

fiduciary duty claim. Id. at 502-503.

The Missouri appellate court also held that:

... [A]lthough there was no finding by the jury that Chilcutt's actions were willful or
intentional, i.e., to support an award of punitive damages, Chilcutt admitted that, as
owner and an officer of Jones Company, any money spent by Jones Company would
have affected him personally. Addressing the explicit concerns of the residents about
the lakes, which Chilcutt admittedly did not do, by excavating massive amounts of
material from the lakes would have cost the developers, including the Jones Company,
a lot of money.

Id. at 497.

Defendant Great Northern Insurance Company ("Great Northern") issued a commercial

general liability insurance policy, # 3522-92-15, to J.E. Jones and Custom Homes, which policy was

in effect during the relevant period. The Great Northern policy provided, in relevant part, as follows

in regard to coverage:

### Coverage

*Bodily Injury, Property Damage, Advertising Injury and Personal Injury*

Subject to the applicable Limits of Insurance, we will pay damages the **insured**
becomes legally obligated to pay by reason of liability imposed by law or assumed
under an **insured contract** for:

> **bodily injury** or **property damage** to which this insurance applies
> caused by an **occurrence**;

...

This insurance applies to:

> **bodily injury** or **property damage** which occurs during the policy;

Def. Ex. D at 6 (emphasis in original).

The Great Northern policy stated the following relevant exclusions:

### Bodily Injury/Property Damage Exclusions

5

*Damage to Impaired Property*

This insurance does not apply to property damage to impaired property or property that has not been physically injured arising out of:

> a defect, deficiency, inadequacy, or dangerous condition of your product or your work; or

> a delay or failure by you or someone acting on your behalf to perform a contract or agreement in accordance with its terms.

...

*Damage to Property of Others (Care, Custody or Control)*

This insurance policy does not apply to **property damage** to:

> ...
> property of others you hold for sale or entrusted to you for safekeeping;

> property of others on your premises for the purpose of having operations performed on such property by you or on your behalf;

...
*Damage to Your Product*

This insurance policy does not apply to **property damage** to **your product** arising out of it or any part of it.

*Damage to Your Work*

This insurance policy does not apply to property damage to your work arising out of it or any part of it and included in the products-completed operations hazard.

Def. Ex. D at 10.

The Great Northern policy also included the following exclusion:

**Bodily Injury/Property Damage Exclusions**

*Expected or Intended Injury*

This insurance policy does not apply to **bodily injury** or **property damage** which results from an act that:

> is intended by the insured; or

6

> can be expected from the standpoint of a reasonable person to cause bodily injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected.

Def. Ex. D at 11.

The Great Northern policy defined "Property Damage" as:

> physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Def. Ex. D at 24 (emphasis in original).

The Great Northern policy defined "Impaired property" as:

> tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

> > it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate, or dangerous; or

> > you have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

> > the repair, replacement, adjustment, or removal of **your product** or **your work**; or

> > your fulfilling the terms of the contract or agreement.

Def. Ex. D at 19-20.

The Great Northern policy defined "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Def. Ex. D at 22.

Defendant Federal Insurance Company ("Federal") issued J.E. Jones an Excess Follow Form Liability insurance policy, # 7906-69094, (the "Federal excess policy"). This policy provided two insuring agreements, Coverage A which was designated Excess Follow Form Liability Coverage, and

7

Coverage B which was designated Umbrella Liability coverage. Plaintiffs J.E. Jones, Custom Homes and their officers, directors, and employees were insureds under the Federal excess policy during the relevant period. This policy stated in regard to Coverage A that if the underlying insurance policy, which was the above described Great Northern policy, "does not cover loss, for reasons other than exhaustion of an agreement limit of insurance by payment of claims, then we will not cover such loss." Def. Ex. F at 1. In regard to Coverage B, the Federated excess policy stated that:

Under coverage B, we will pay on behalf of the insured, damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage, personal injury, or advertising injury covered by this insurance which takes place during the Policy Period of this policy and is caused by an occurrence. We will pay such damages in excess of the Retained Limit Aggregate specified in Item 4d. of the Declarations or the amount payable by other insurance, whichever is greater.

... .

Coverage B will not apply to any loss, claim or suit for which insurance is afforded underlying insurance or would have been afforded except for the exhaustion of the limits of underlying insurance.

Subject to a reservation of rights Great Northern and Federal provided a defense to J.E. Jones and Custom Homes for the above described Twin Chimneys litigation. Great Northern indemnified J.E. Jones and Custom Homes for the judgment and verdict on the negligence claim described above, including post-judgment interest, in the amount of $17,453.82. Great Northern and Federal denied coverage for the judgment and verdict in regard to the breach of fiduciary duty in the amount of $987,940. Plaintiffs filed the Complaint in the matter under consideration seeking declaratory judgment as to Great Northern and Federal's obligations to indemnify for the breach of fiduciary duty. In their Motions for Summary Judgment Great Northern and Federal contend that breach of fiduciary duty is not covered under the relevant insurance policies and additionally that the breach of fiduciary

8

duty found by the court in the prior litigation comes within policy exclusions. J.E. Jones argues to the contrary in its Motion for Summary Judgment.

## STANDARD FOR SUMMARY JUDGMENT

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson,

9

477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Defendants' Motions for Summary Judgment.

## DISCUSSION

### A. Legal Framework Applicable to Interpretation of Insurance Contracts:

1. State law controls the rules of construction of insurance contracts. St. Paul Fire and Marine Ins. Co. v. Missouri United School Ins. Council, 98 F.3d 343, 345 (8th Cir.1996); Childers v. State Farm Fire & Cas. Co., 799 S.W.2d 138, 140 (Mo. Ct. App. 1990). "The interpretation of an insurance policy is a question of law." Hartford Ins. Co. of the Midwest v. Wyllie, 396 F. Supp.2d 1033, 1039 (E.D. Mo. 2005) (citing McCormack Baron Mgmt. Servs., Inc. v. Am Guarantee & Liability Ins. Co., 989 S.W.2d 168, 171 (Mo. 1999)).

2. "When interpreting the language of an insurance policy, [Missouri courts] give the language its plain meaning." Ware v. GEICO Gen. Ins. Co, 84 S.W.3d 99, 102 (Mo. Ct. App. 2002) (citing Lang v. Nationwide Mut. Fire Ins. Co., 970 S.W.2d 828, 830 (Mo. Ct. App. 1998)). Plain meaning is defined as what "a reasonable layperson in the position of the insured" would have thought the words of the policy meant. Id. (citing Goza v. Hartford Underwriters Ins. Co., 972 S.W.2d 371, 374 (Mo. Ct. App. 1998); Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri, 992 S.W.2d 308, 316 (Mo. Ct. App. 1999)). See also Hartford, 396 F. Supp.2d at 1038.

3. "The rule in Missouri is that [insurance] policy provisions 'designed to cut down, restrict, or limit insurance already granted, or introducing exceptions or exemptions, must be strictly construed against the insurer.'" Bituminous Cas. Corp. v. Walsh & Wells, Inc., 170 S.W.2d 117, 121 (Mo. Ct. App.1943). In Missouri Employers Mutual Insurance Co. v. Nichols, 149 S.W.3d 617, 625 (Mo. Ct.

10

App. 2004), the court set forth the following principals applicable to interpretation of insurance contracts under Missouri law:

> In interpreting an insurance contract, we are to read the contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written. Id. In doing so, we are to give the language used in the insurance contract its plain and ordinary meaning. Id. If, giving the language used its plain and ordinary meaning, the intent of the parties is clear and unambiguous, we cannot resort to rules of construction to interpret the contract. Id. The mere fact that the parties disagree over the interpretation of the terms of a contract does not create an ambiguity. Id. An ambiguity arises where there is a duplicity, indistinctness, or uncertainty in the meaning of the words used in an insurance contract. Id. If a term is specifically defined in an insurance policy, courts will normally look to that definition and nowhere else to determine its meaning. Id. at 663. However, in order for the contract definition to necessarily control, the definition itself must be reasonably clear and unambiguous. Id. Otherwise, an appellate court is free to give a reasonable construction to the term, applying general contract principles and resolving doubts in favor of the insured. Id.

See also Oak River Ins. Co. v. Truitt, 390 F.3d 554, 557 (8th Cir. 2004) (holding that an insurance policy should be read as a whole to determine the parties' intent) (citing Kyte v. Am. Family Mut. Ins. Co., 92 S.W.3d 295, 298-99 (Mo. Ct. App. 2002); Stotts v. Progressive Classic Ins., 118 S.W.3d 655, 662 (Mo. Ct. App.2003)); TNT Speed & Sport Center, Inc. v. American States Ins. Co., 114 F.3d 731, 732 (8th Cir. 1997) ("'If the language of an insurance contract is clear and unambiguous, the court does not have the power to rewrite for the parties and must construe the contract as written.'") (quoting Shaffner v. Farmers Mutual Fire Ins. Co., 859 S.W.2d 902, 906 (Mo. Ct. App. 1993)).

Where an insurance policy is ambiguous it should be construed against the insurance company. See Oak River, 390 F.3d at 557. The court in Oak River further explained that ambiguity in an insurance policy arises when its language "is reasonably open to different constructions." Id. at 558 (citing Lincoln County Ambulance v. Pac. Employers Ins., 15 S.W.3d 739, 743 (Mo. Ct. App.1998); Stotts, 118 S.W.3d at 662). Moreover, "[a]n insurance policy that promises something at one point and then takes it away at another is ambiguous." Id. (citing Behr v. Blue Cross Hosp.

11

Serv. Inc., 715 S.W.2d 251, 256 (Mo.1986) (en banc); Maxon v. Farmers Ins. Co. Inc., 791 S.W.2d

437, 438 (Mo. Ct. App.1990)). "Whether an insurance policy is ambiguous is a question of law."

Ware, 84 S.W.2d at 102 (citing Niswonger, 992 S.W.2d at 316).

4.      "Under Missouri law the plaintiff has the burden of showing that the loss and damages are

covered by the policy; the defendant insurer has the burden of demonstrating the applicability of any

exclusions on which it relies." American States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. Ct.

App. 1998) (citing Taylor-Morley-Simon, Inc. v. Michigan Mut. Ins. Co., 645 F. Supp. 596, 599 (E.D.

Mo.1986)).

5.      In regard to the risk insured under a "standard form commercial general liability policy," the

Missouri appellate court held in American States, 974 S.W.2d at 649, that:

> ... [A] standard form commercial general liability policy [] insures certain property
> damage caused by accident to the property of others. The intent of such policies is to
> protect against the unpredictable and potentially unlimited liability that can result from
> accidentally causing injury to other persons or their property. Schauf, 967 S.W.2d at
> 78. A commercial general liability policy is not intended to protect business owners
> against every risk of operating a business. Id. "Business risks are those risks that are
> the 'normal, frequent, or predictable consequences of doing business, and which
> business management can and should control and manage.' " Id. (quoting James T.
> Hendrick & James P. Wiezel, The New Commercial General Liability Forms-An
> Introduction and Critique, 36 Fed'n Ins. & Corp. Couns. Q. 319, 322 (Summer
> 1986)).It is not the function of the CGL policy to guarantee the technical competence
> and integrity of business management. The CGL policy does not serve as a
> performance bond, nor does it serve as a warranty of goods or services. It does not
> ordinarily contemplate coverage for losses which are a normal, frequent or predictable
> consequence of the business operations. Nor does it contemplate ordinary business
> expense, or injury and damage to others which results by intent or indifference.
> Hendrick & Wiezel, supra, at 322 n. 6 (quoting George H. Tinker, Comprehensive
> General Liability Insurance-Perspective and Overview, 25 Fed. Ins. Couns. Q. 217,
> 224 ((Spring 1975)).

See also Cincinnati Ins. Co. v. Venetian Terrazzo, Inc., 198 F. Supp.2d 1074, 1079 (E.D. Mo. 2001)

("'[G]eneral liability coverage is not intended as a guarantee of the quality of an insured's product or

work. In an attempt to give effect to the intent underlying both the coverage and exclusion provisions

of commercial liability policies, courts have interpreted such policies as insuring the risk of the insured causing damage to other persons and their property, but not insuring the risk of the insured causing damage to the insured's own work.'") (quoting Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74 (1998).

6.     Missouri courts have assigned the following common meaning to the term "accident" in the context of a standard form commercial general liability policy which defines an "occurrence" as an "accident":

> An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident.

American States, 974 S.W.2d at 649 (citing West v. Jacobs, 790 S.W.2d 475, 477 (Mo. Ct. App.1990); Lindemann v. Gen. Am. Life Ins. Co., 485 S.W.2d 477, 479 (Mo. Ct. App.1972)).

Because a loss resulting from a breach of contract results from failure to follow through with a "defined contractual duty" a breach of contract "cannot fall within the term 'accidents.'" Id. at 650 Likewise, a breach of lease is not an accident, West v. Jacobs, 790 S.W.2d at 478; a breach of construction contract is not an accident, Maryland Cas. Co. v. Mike Miller Cos., Inc., 715 F. Supp. 321, 323 (D. Kan.1989); a breach of contract to design and provide filtration system is not an accident, Koch Eng'g Co. v. Gibraltar Cas. Co., 878 F. Supp. 1286, 1288-89 (E.D. Mo.1995); and a breach of contract is not an accident, Hartford, 396 F. Supp.2d 1033. Such breaches of contract are not accidents within the intent of a general liability policy because its purpose "is to protect against the unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property." American States, 974 S.W.2d at 649. Performance of contractual obligations are "within the control and management" of a party to a contract; therefore, "failure to perform cannot be described as an undesigned or unexpected event." Id. at 650.

13

7.     Where a commercial general liability portion of an insurance policy specifically defines "occurrence" as "an **accident**, including continuous or repeated exposure to substantially the same general harmful conditions," negligence is covered by the policy although intentional torts are not covered. Cincinnati Ins. Co. v. Meramec Valley Bank, 259 F. Supp.2d 922, 928 (E.D. Mo. 2003) (citing Lampert v. State Farm Fire and Cas. Co., 85 S.W.3d 90, 95 (Mo. Ct. App. 2002) (holding that fraudulent misrepresentation claim, as opposed to negligent misrepresentation claim, is an intentional tort and therefore falls within a policy's "expected or intended" act exclusion). Acts which are "expected or intended from the standpoint of the insured" are not occurrences as they are not accidents. Id. (citing Lampert, 85 S.W.3d at 95). In Meramec Valley, 259 F. Supp.2d at 928, the Missouri court rejected the insured's argument that "[a]lthough a claim for fraudulent misrepresentation includes an element of intent, the resulting injury or damage was accidental." See also American States Insurance Company v. Herman C. Kemper Construction Company, Inc., 71 S.W.3d 232, Mo.Ct. App. 2002) (holding that a claim for negligent misrepresentation *can* be an "occurrence" within the meaning of an insurance policy because it *can* be an accident; "[t]hough the claim of negligent supervision includes the element of intent, 'the falsity in the statement and the resulting injury or damage may be accidental' and the claim should be treated 'like other forms of negligence.'" (internal quotations excluded) (emphasis added).

## B.     Application of Law to the Great Northern and Federal Insurance Policies:

As stated above, the issue before this court is whether Great Northern and Federal must indemnify Jones in regard to the judgment in the Twin Chimneys litigation for Chilcutt's breach of fiduciary duty. The Federal policy is an excess policy which provides coverage only if the Great Northern policy provides coverage for Jones and if Jones is found liable for an amount which exceeds the coverage of the Great Northern policy. The court will, therefore, address Great Northern's

liability and need only consider Federal's liability if it finds that Great Northern has a duty to indemnify Jones for Chilcutt's breach of fiduciary duty.

1. Breach of Fiduciary Duty as Covered Occurrence:

Great Northern and Federal argue that Chilcutt's breach of fiduciary duty is not an occurrence which is covered by the relevant insurance policies. Doc. 20 at 7-14; Doc. 23 at 9-15. To the contrary, Jones contends that breach of fiduciary duty is an occurrence. Jones further contends that the breach of fiduciary duty found in the Twin Chimneys' litigation did not involve intent and that, therefore, this conduct comes within the definition of occurrence. Doc. 31 at 5-7; Doc. 38 at 7-12.

This court must determine as a matter of law whether the Great Northern insurance policy covers Chilcutt's breach of fiduciary duty as found in the Twin Chimneys litigation. See Hartford, 396 F. Supp. at 1039. In order to be covered under this insurance policy, Chilcutt's breach of fiduciary duty must have resulted in "bodily injury or property damage" caused by an "occurrence" as defined by the Great Northern policy. While the court must assign the plain meaning of this language to its interpretation of the policy language, Missouri law equates an "occurrence" in the context of a commercial general liability insurance policy with an "accident." American States, 974 S.W.2d at 650. Thus, to be covered under the Great Northern policy, Chilcutt's breach of fiduciary duty must have been an accident. As such, it must have been an *unexpected event* or a *mishap* and *not intentional*.[7] See id.; Meramec Valley, 259 F. Supp.2d at 928. On the other hand, if it was

---

[7]    The Great Northern policy states that "the policy does not apply to ... **property damage** which results from an act that: is intended by the insured or can be expected from the standpoint of a reasonable person to cause ... **property damage**, even if the ... damage is of a different degree or type than actually intended or expected." Def. Ex. D at 11 (emphasis in original). Thus, independent of whether the breach of fiduciary duty is an occurrence, if it is intentional it comes within the plain meaning of a policy exclusion.

15

accidental, the breach of fiduciary duty is an occurrence within the meaning of the policy. See American States, 974 S.W.2d at 650.

To determine whether Chilcutt's conduct was intentional the court will first consider Instruction 24 in the Twin Chimneys litigation. This instruction required the jury to find that Chilcutt failed to *exercise control* with respect to the maintenance, repair or rebuilding of the lakes and that he failed to act in the best interests of the homeowners or failed to act in a manner which placed the interest of the homeowners above those of his employer. The Missouri appellate court found that Instruction 24 adequately reflected the requirements of Missouri law for finding a breach of fiduciary duty. In particular, the Missouri appellate court found that the instruction was sufficient to find that Chilcutt had a duty, that he breached that duty, and that this breach was the proximate cause of damages suffered by the Association. While Instruction 24 did not specifically include the word "intend" and while the jury did not find that Chilcutt's actions were sufficient to establish the Association was entitled to punitive damages, this instruction did require the jury to find that maintenance of the lake was within Chilcutt's *control* as a trustee and that he, therefore, made a deliberate decision regarding the build up of siltation in the lake.

Moreover, an expected consequence of Chilcutt's breach of fiduciary duty was the resulting siltation in the lake. The build up of siltation in the lake was a predictable consequence of Chilcutt's breach of fiduciary duty; it certainly was not unexpected. American States, 974 S.W.2d at 649. The undisputed facts, as established by the finding of the court in the Twin Chimneys litigation, establish that Chilcutt made a business decision regarding the lake and that the build up of siltation was a natural consequence of this decision. Id. As such, the excessive siltation in the lake was not an "undesigned or unexpected event." Id. at 650.

16

As stated above, it is well established that a commercial general liability policy does not contemplate indemnification for ordinary business expenses nor does such a policy guarantee the quality of an insured's product. Mcramec Valley, 198 F. Supp.2d at 1079; American States, 974 S.W.2d at 649. Furthermore, as stated by the court in American States, 974 S.W.2d at 649, commercial general liability policies are not meant to protect business owners against the "consequences of doing business" nor do they protect against business owners from matters which they "can and should control and manage." Instruction 24 makes it clear that Chilcutt's breach of fiduciary duty involved the duty to control and/or manage and that he made a deliberate decision in this regard.

While the parties have not suggested nor has the court's research revealed case law directly on point as to whether a breach of fiduciary duty is an "accident" or "occurrence" within the meaning of a commercial general liability insurance policy,[8] the court finds that the duty of a fiduciary as defined by Instruction 24 is analogous to the duty to follow through with a "defined contractual

---

[8] Great Northern cites Lampert v. State Farm Fire and Casualty Co., 85 S.W.3d 90 (Mo. Ct. App. 2002), in support of its position that a breach of fiduciary duty is not an occurrence. While addressing the duty to provide a defense, as opposed to the duty to indemnify, the court in Lampert, 85 S.W.3d at 93-94 (Mo. Ct. App. 2002), suggested that a breach of fiduciary duty was not covered under the plaintiff's insurance policy although negligent misrepresentation was. This statement, however, was dicta; the court did not elaborate on this point upon holding that the duty to defend under Missouri law is broader than the duty to indemnify. In particular, the court in Lampert held that "[t]he presence of some insured claims in the underlying suit gives rise to a duty to defend, even though uninsured claims or claims beyond the coverage may also be present." Id. (citation omitted). The context of the court's decision suggests, but does not hold, that breach of fiduciary duty is an uninsured claim. Likewise, Hartford Insurance Company of the Midwest v. Wyllie, 396 F. Supp.2d 1033 (E.D. Mo. 2005), cited by Great Northern for the holding that breach of fiduciary duty is not an occurrence, involved allegations of breach of contract and fraud, which clearly involve intent; this case did not involve an allegation of a breach of fiduciary duty.

17

duty."[9] See id. at 650. Missouri law is clear that breach of a defined contractual duty does not fall within the term "accident" or "occurrence" as used in a commercial general liability policy. See Hartford, 396 F. Supp.2d at 1033; Koch, 878 F. Supp. at 1288-89; Maryland Casualty, 715 F. Supp. at 323; American States, 974 S.W.2d at 649-50; West, 790 S.W.2d at 478. For these reasons the court finds that the breach of fiduciary duty as found by the court in the Twin Chimneys litigation is not an occurrence as contemplated by the Great Northern insurance policy. Under such circumstances, Great Northern and Federal are not required to indemnify Jones for the $987,940 judgment against it for Chilcutt's breach of this duty.

2.    Property Damage:

As stated above, to be covered under the Great Northern policy, the breach of fiduciary duty as found in the Twin Chimneys litigation must have resulted in "property damage" caused by an "occurrence." Because the court has found that the breach of fiduciary duty is not an "occurrence," even if the breach of fiduciary duty resulted in "property damage," it is not covered under the policy. See Meramec Valley, 259 F. Supp.2d at 928 (holding that, pursuant to a commercial general liability policy, because the damage for which the insured sought indemnification arose out of the insured's fraud, such damage was not property damage); Lampert, 85 S.W.3d at 93 (holding that where there is no "occurrence" within the meaning of an insurance policy, there can be no property damage). The court, therefore, need not determine whether the build up of siltation in the lakes in the Twin Chimneys subdivision is property damage within the meaning of the Great Northern policy.[10]

_____

[9]    Significantly, the Great Northern policy excludes "Breach of Contract" and "Contractual Liability." Def. Ex. D at 12.

[10]    Great Northern and Federal contend that the buildup of excessive siltation in the lakes is not *property damage*. Doc. 20 at 14-17; Doc. 23 at 17-19. Jones contends that while the policy defines "property damage" as "physical injury" or "tangible injury," it does not define these terms; that, therefore, the court must assign the ordinary and plain meaning to these terms;

18

Jones nonetheless argues that Great Northern and Federal's indemnifying Jones for the negligent construction of the entrance monument "amounts to an admission by Great Northern and Federal that the lakes are covered property. Doc. 31 at 7-8; Doc. 38 at 4. The court disagrees with Jones's suggestion that Great Northern has admitted liability for the breach of fiduciary duty found in the Twin Chimneys litigation. First, there is no case authority to support this assertion. Second, as found above, while the commercial general liability insurance policy at issue provides coverage for negligent acts, it does not provide coverage for a breach of fiduciary duty. Third, Great Northern and Federal defended Jones in the Twin Chimneys litigation pursuant to a reservation of rights. See Def. Ex. M at 1-3. As such, by providing a defense to Chilcutt and Jones in the Twin Chimneys litigation where both negligence and a breach of fiduciary duty were alleged, Great Northern and Federal did not admit they had a duty to indemnify regarding the alleged breach of fiduciary duty.

Because the court has found that Chilcutt's breach of fiduciary duty is not an occurrence within the plain meaning of the Great Northern policy or as defined by that policy, the court finds that Great Northern is not required to indemnify Jones for the breach of fiduciary duty found in the Twin Chimneys litigation. Under such circumstances, the court further finds that Federal is not required to indemnify Jones pursuant to the excess policy it issued for Jones's benefit. As such, summary judgement and declaratory judgment will be granted in favor of Federal and Great Northern. Additionally, the court need not determine whether the policies otherwise exclude coverage.

and that such meaning encompasses the lakes and/or damage to the lakes in the Twin Chimneys subdivision. Doc. 38 at 3-7.

19

## MOTION TO STRIKE

Defendants have moved to strike Plaintiff's Exhibit S, the affidavit of Howard Chilcutt, and Plaintiff's Exhibit T, the affidavit of Plaintiff's counsel, J. Vincent Keady.[11] Doc. 45. In support of the Motion to Strike Defendants contend that Chilcutt's affidavit includes hearsay, has a lack foundation and a basis of personal knowledge, and is irrelevant and/or otherwise fails to comply with the requirement of Rule 56(e) that an affidavit submitted in support of a motion for summary judgment be made on personal knowledge and set forth facts which would be admissible into evidence. Additionally, Defendants contend that the court should strike Keady's affidavit pursuant to Rule 408 in that this affidavit describes settlement discussions which occurred during the Twin Chimneys litigation.

Plaintiffs respond that the affidavits do not include hearsay; that the court must decide whether the siltation at the Twin Chimneys lakes resulted from accidental, negligent, or unintentional conduct so as to fall within the coverage afforded by the relevant policies; and that Chilcutt's affidavit shows that he lacked any intent to harm the lakes or the Twin Chimneys property owners. In regard to Keady's affidavit Plaintiff contends that Rule 408 does not apply because the affidavit does not relate to a claim "then under negotiation"; Rule 408 does not require the exclusion of evidence regarding a settlement claim different from the one being litigated. Doc. 47.

Homer Clark was a trustee of the Twin Chimneys Association and was dismissed from the litigation involving the lakes prior to the commencement of the trial. In his affidavit, Chilcutt states that Clark had authority to make decisions regarding homeowner complaints without seeking approval from other trustees including Chilcutt. Chilcutt also states that while he was a trustee he relied upon

---

[11]     Plaintiffs attached Exhibits S and T to their Reply to the Response to their Motion for Summary Judgment.

20

Clark to address subdivision issues including siltation. To the extent the affidavit attempts to contradict findings of the court in the Twin Chimneys litigation and/or to assign blame for the siltation upon Clark, such matters are not relevant to the matter before this court. The only issue before this court is whether Federal and Great Northern must indemnify Jones for the judgment in regard to Chilcutt's breach of fiduciary duty as found by the court in the Twin Chimneys litigation. The parties may not relitigate in the instant proceedings the issue of whether Chilcutt breached a fiduciary duty.

Rule 408 provides that evidence of offers made in compromising a claim are not admissible to prove liability or invalidity of the claim. In his affidavit, Keady states that he participated in settlement negotiations in the Twin Chimneys litigation on behalf of Plaintiffs; that during negotiations a claims representative for Great Northern and Federal offered $1.1 million on behalf of Great Northern and/or Federal to resolve all claims with the Association; and that the offer was rejected. First, the court notes that the fact that a settlement offer was made and rejected is not relevant to the matter under consideration. Second, to the extent that Plaintiffs proffer Ready's affidavit to establish liability on the part of Great Northern and/or Federal, Ready's affidavit comes within Rule 408. The court finds, therefore, Chilcutt and Ready's affidavits should be stricken and that the Motion to Strike filed by Defendants should be granted in its entirety.

## CONCLUSION

For the reasons more fully set forth above the court finds that the Motions for Summary Judgment filed by Defendants should be granted and that declaratory judgment should issue in their favor. The court also finds that the Motion for Summary Judgment filed by Plaintiffs should be denied. The court also finds that the Motion to Strike should be granted.

Accordingly,

21

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Federal Insurance Company is **GRANTED**; Doc. 18

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Northern Insurance Company is **GRANTED**; Doc. 20

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by J.E. Jones Construction Co. and the Jones Company Custom Homes Inc. n/k/a REJ Custom Homes, is **DENIED**; Doc. 27

**IT IS FURTHER ORDERED** that the Motion to Strike filed by Federal Insurance Company is **GRANTED**; Doc. 44

**IT IS FURTHER ORDERED** that a Declaratory Judgment incorporating this Memorandum Opinion shall issue on this same date.

> /s/Mary Ann L. Medler
> MARY ANN L. MEDLER
> UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of September, 2006.

22